*1245 SHEPARD, Chief Justice,
dissenting as to sanction.
This is respondent David J. Cohnan’s fourth disciplinary proceeding; three of these have occurred since I became a member of this tribunal. The most recent of these involved very substantial federal tax evasion, a federal felony conviction, and an eighteen-month suspension of Respondent’s license.
When Respondent’s application for reinstatement was before us in 1999,1 voted to readmit him. I was satisfied with the conclusions reached by all but one of the members of the Disciplinary Commission that Respondent was genuinely remorseful about his misconduct, that he understood the nature of it, and that he could safely be recommended to the public as a person fit to represent them. The present misconduct involves two different clients with very different legal matters, but Respondent’s approach to both of these, as today’s opinion says, suggests that he saw the lawyer-client relationship “as a chance for financial gain if the opportunity arises.”
I see Respondent’s violations in the two present counts as quite serious, and in light of the fact that this is Respondent’s fourth disciplinary proceeding, I have given much thought to whether the appropriate sanction is a suspension of three years or disbarment.
I spent considerable time going behind the briefs Respondent’s lawyer has filed with us, the stern theme of which is that Respondent did not violate any of the Rules of Professional Conduct. Sometimes, one’s advocate advances a position or defense more forcefully than the client’s own assessment might reflect. I hoped to learn that Respondent might harbor some doubt about the choices he made.
It was not to be so. Respondent’s testimony before the Hearing Officer, the affidavits he made for purposes of this proceeding, and the letters from him and others revealed an insistence that he acted in accord with the letter and spirit of the rules.
Having had several years to reflect on how he handled the will and guardianship of a man in his mid-nineties whom Respondent knew to be infirm, Respondent reasserted on the stand that he saw no possibility that this dual role might limit his representation or present any conflict. “Not that I could see or can see.” “No, absolutely none.” This posture of total denial is similarly reflected in Respondent’s contention that his elderly client’s will was not really handled by Respondent but was rather under the care of attorney Watts, who never met, or spoke, or corresponded with the testator.
Respondent has taken a similar position about the client in Count III, himself hardly an angel. The reasonableness of Respondent’s fees for that client’s several matters and the transparency of the fee arrangement seems to be measured only by the value of the assets that could be mustered, whether it was by transferring the condominium or retrieving $20,000 in a paper bag on top of the client’s water heater (missed by the state and federal officers who searched the premises). Asked on the stand about how the reasonableness of his fee might be analyzed, Respondent finally said a reasonable fee was “[a]nything anybody will pay.”
It is difficult to imagine that any future expressions of remorse about these actions could be persuasive, such that readmission might occur. And, it is hard to fashion an argument for the public that Respondent’s behavior has been such that we might at some future date want, again, to tell clients they can entrust their own dearest matters to him. I thus vote to disbar.